**10**
Stephan M. Brown (SBN: 300563)
Muhammed Y. Altun (SBN: 355410)
The Bankruptcy Group, P.C.
2408 Professional Drive
Roseville, CA 95661
800-920-5351
916-242-8588 (fax)
ECF@thebklawoffice.com

Proposed Attorneys for Debtor in Possession
Moore Holdings, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>MOORE HOLDINGS, LLC,<br><br>    Debtor in Possession. | Chapter 11 Case No. 25-20053<br><br>DCN: UST-1<br><br>**OPPOSITION TO JOINDER BY POPPY BANK IN U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS CHAPTER 11 CASE**<br><br>Date: March 27, 2025<br>Time: 10:30 AM<br>Dept: E, Courtroom 33, 6th Floor<br><br>Hon. Judge Ronald H. Sargis |

<u>**OPPOSITION TO JOINDER BY POPPY BANK IN U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS CHAPTER 11 CASE**</u>

Moore Holdings, LLC, Debtor in Possession ("Debtor"), respectfully submits this Opposition to the Joinder ("Joinder") filed by creditor Poppy Bank ("Creditor") in support of the United States Trustee's ("UST") Motion to Convert or Dismiss.

///

///

## I. INTRODUCTION

1. Since filing this Chapter 11 case on January 7, 2025, Debtor has diligently sought to maintain operations, address compliance issues, and propose a viable path forward that benefits all creditors. While Creditor's Joinder repeats many of the UST's arguments about insurance coverage, Debtor has cured those deficiencies by procuring a non-force placed policy covering property and liability.

2. Creditor also alleges that Debtor's use of cash collateral was unauthorized, and that Debtor engaged in "gross mismanagement." In fact, Debtor filed a Motion for Authority to Use Cash Collateral on March 4, 2025, and will amend it to reflect updated projections, including InnerScope's payment plan, and a new agreement to rent suite 104 this month. Debtor carefully segregates rental income, diligently tracks its expenditures, and relies on its members to perform essential managerial and operational tasks. Debtor has cooperated fully with the U.S. Trustee, supplied all requested documentation, and continues to work in good faith with all parties. Because Debtor has cured prior deficiencies and is actively reorganizing to benefit all creditors, dismissing or converting this case would be premature and detrimental to the estate. Debtor's reorganization path is both feasible and protective of creditors' interests. Accordingly, Creditor's Joinder should be denied.

## II. STATEMENT OF FACTS

3. Debtor filed its voluntary petition on January 7, 2025, seeking to reorganize and protect its primary asset, a commercial building located at 2151 Professional Drive, Roseville, CA (the "Real Property"), from foreclosure while stabilizing rental operations. Moore Decl. ¶ 3.

4. Debtor is engaged in renting commercial units in the Real Property to generate income. The latest appraisal values the Real Property at $3,500,000.00, while secured claims against it total approximately $2,026,622.45. Moore Decl. ¶ 4.

Filed 03/13/25

5. A drastic rise in Debtor's mortgage interest rate, SBA 7(a) mortgage interest rate, increased from 3% to 10.5% in 2024, significantly raising monthly loan obligations from $12,000 to $20,000. When the loan payment was $12,000 a month with 50% of the building leased Debtor were able to make the monthly loan payments. Additionally, Tenant occupancy declined in 2024 due to economic downturns, reducing cash flow and impairing Debtor's ability to pay the mortgage. Moore Decl. ¶ 5.

6. Current occupancy is at 40%, but Debtor's 6-month budget plan aims to lease vacant units and restore cash flow. For example, Debtor will execute a new agreement with a new tenant for suite 104 this month, which is reflected in the amended 6-month budget plan, will provide an extra $2,199.65 each month, and will cure and exceed any "improper usage" alleged by Creditor under 11 U.S.C. § 1112(b)(4)(D). Moore Decl. ¶ 6.

7. Debtor is actively working on finding more tenants for available units and in negotiations with potential tenants, expecting an increase in occupancy withing the 6 months as it is shown in the 6-months budget plan. 100% occupancy of the building at current market rate would approximately generate $33,516.84 per month, which would create a positive cash and allow Debtor to make the current loan and property tax dues payments. (*Id*.)

8. Additionally, a payment plan was negotiated with InnerScope Hearing Technologies, a tenant that owes more than $500,000 in rent arrears, to recover outstanding rents. The payment arrangement on this delinquency will bolster Debtor's cash flow, further supporting the feasibility of reorganization., and cure any payment alleged to be improper or harmful to 1 or more creditors under 11 U.S.C. § 1112(b)(4)(D). Moore Decl. ¶ 7.

9. Debtor's goal is to confirm a plan of reorganization that will pay all creditors in full while preserving the value of the Real Property. Maintaining tenancy also allows existing businesses on the Real Property to continue operating without disruption. Debtor 6-motnh plan includes

3

immediate tax and HMA payments, and also starting to pay Creditor in August with a payment amounting $19,290.96. Moore Decl. ¶ 8.

10. Debtor believed to be in substantial compliance with the United States Trustee's Chapter 11 guidelines and upon receipt of the motion to dismiss addressing certain deficiencies has taken steps to become in compliance. Moore Decl. ¶ 9.

11. As soon as Debtor recognized that the preexisting force-placed policy did not provide adequate liability protection or match the Real Property's full value, it obtained comprehensive, non-force placed coverage and informed the UST. This policy now protects both property and liability interests. Moore Decl. ¶ 10.

12. Debtor filed a Motion for Authority to Use Cash Collateral on March 4, 2025. Debtor will amend it and the accompanying six-month budget to account for newly negotiated terms with InnerScope, rental income from suite 104, and to provide additional adequate protection. Moore Decl. ¶ 11; Exh A.

13. The delay in this case resulted from unusual circumstances, which have caused insurance crises in California, after extensive fires. Nevertheless, Debtor showed its good intention and full commitment, communicated continuously with the UST in the IDI interview, and 341 meetings about this delay and ultimately secured compliant coverage that protects both the estate and the public. Debtor remains fully committed to comply with all rules of bankruptcy, cooperate with UST, the Court and Creditors to reorganize. Moore Decl. ¶ 12.

14. Creditor claims Debtor's counsel did not respond to a February 13, 2025, email. Debtor's counsel addressed Creditor's concerns upon becoming aware of the email, gathering the necessary information regarding rental income, expenses, and proposed adequate protection measures. Altun Decl. ¶ 4.

15. Continuing Debtor's operations requires immediate handling of financial and management tasks, tenant oversight, building repairs and maintenance, janitorial and landscaping needs and other administrative duties. Because Debtor has no formal employees, its members (there are just three members) perform these vital functions. Accordingly, health insurance costs and limited reimbursements are typical and necessary business expenses rather than mismanagement or enrichment. As it is seen in the 6-month budget plan, there will be no partner distribution during the plan. Moore Decl. ¶ 13.

16. Any allegedly improper spending was made in good faith for essential tasks, not to harm creditors. Debtor cured deficiencies by obtaining adequate insurance and improving cash flow and remains focused on maintaining value for the estate and ensuring adequate protection for all parties. Moore Decl. ¶ 14.

### III. LEGAL STANDARD

17. Creditor bears the burden of demonstrating by a preponderance of the evidence that "cause" exists to convert or dismiss this Chapter 11 case. See *In re Sullivan*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014). Under 11 U.S.C. § 1112(b)(1), the Court must then evaluate whether dismissal or conversion would be in the best interests of creditors and the estate. Section 1112(b) enumerates various non-exclusive grounds for dismissal or conversion, but courts "should consider other factors as they arise, and use [their] equitable powers to reach the appropriate result." *In re Consolidated Pioneer Mortgage Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) aff'd, 264 F.3d 803 (9th Cir. 2001).

18. Furthermore, even if "cause" is established, 11 U.S.C. § 1112(b)(2) prohibits dismissal or conversion if the Court finds (1) unusual circumstances exist demonstrating such relief is not in the best interests of creditors and the estate, (2) there is a reasonable likelihood that a plan will be confirmed within the timeframes established, and (3) and there exists a reasonable justification for

the act or omission; and it will be cured within a reasonable period of time fixed by the court. Here, the UST has not established "cause" to convert or dismiss, and, in any event, the circumstances of this case squarely weigh in favor of denying the Motion.

## IV. LEGAL ARGUMENT

### A. "Failure to Obtain Appropriate Insurance" Does Not Warrant Dismissal

19. Creditor argues that Debtor's prior reliance on a force-placed policy supports dismissal under 11 U.S.C. § 1112(b)(4)(C). However, as explained in the Opposition to UST's Motion, as soon as Debtor discovered the force-placed policy is not adequate, Debtor started to search, even though found hardship to have it immediately due to insurance crises in California, and obtained comprehensive non-force placed coverage. This new policy insures both property and liability interests, curing the asserted deficiency. Moore Decl. ¶ 3. Because Debtor has maintained continuous efforts to comply with UST guidelines, and now holds adequate coverage, there is no present cause to convert or dismiss the case under § 1112(b)(4)(C)(H).

### B. "Unauthorized Use of Cash Collateral" and Alleged Mismanagement Do Not Justify Dismissal

20. Pursuant to § 1112(b)(4)(D) "cause" includes "unauthorized use of cash collateral substantially harmful to 1 or more creditors." Further, 11 U.S.C. § 1112(b)(2) sets forth a prohibition to dismiss or convert under certain circumstances, which exist in this case as explained below.

21. Creditor contends that Debtor's use of rents without a stipulation or court order constitutes unauthorized use of cash collateral under 11 U.S.C. § 363. Debtor, however, filed a Motion for Authority to Use Cash Collateral on March 4, 2025, promptly seeking court approval to pay necessary operating expenses. Moore Decl. ¶ 11.

22. The record shows that any funds spent by Debtor were allocated in good faith, targeted at preserving the Real Property rather than harming creditors. Moore Decl. ¶ 14. Debtor has no formal employees; its members perform crucial daily tasks, including tenant oversight, repairs, and administrative duties. Consequently, certain reimbursements or payments (for example, health insurance) are legitimate operating expenses designed to sustain the building's value and occupancy levels, rather than self-enrichment or mismanagement. Moore Decl. ¶ 13.

23. Because Debtor must keep the Real Property in rentable condition, regular maintenance, repairs, and tenant support are indispensable. Without employees on payroll, Debtor's managing members have taken on these roles. Moore Decl. ¶¶ 3, 4, 8, 13.

24. Debtor's overarching objective remains confirming a plan of reorganization that repays all creditors in full. Moore Decl. ¶ 8. Sustaining the building's occupancy not only supports the Real Property's income stream but also allows existing commercial tenants to continue operating their businesses without interruption. Dismissing this case or curtailing Debtor's use of cash collateral would prematurely jeopardize Debtor's reorganization prospects and, by extension, creditors' eventual recoveries.

25. Creditor has not established that Debtor's expenditures rise to the level of "substantial harm" for purposes of § 1112(b)(4)(D). The sums used thus far were modest operating expenses, integral to retaining tenants and maintaining property value. Far from impairing Creditor's security, these measures safeguard the Real Property's rental income and therefore help preserve the collateral's worth. Moore Decl. ¶ 14.

26. Debtor's agreement in progress with InnerScope Hearing Technologies—an arrearage of more than $500,000—will support Debtor's monthly income. This enhanced cash flow will be reflected in the amended six-month budget plan, offering heightened assurance to Creditor that Debtor can fund ongoing operations and, eventually, pay secured claims in full. Also, it will be

exceeding, and curing any alleged use of cash collateral, $3,517.37, in the Joinder. (11 U.S.C. § 1112(b)(2)); Moore Decl. ¶ 7.

27. Debtor's six-month budget prioritizes insurance premiums, taxes, HMA payments, property maintenance, and occupancy growth before payments to Creditor in August 2025. This approach is vital for stabilizing Debtor's operations and reaching the point, likely around July 2025, when projected occupancy climbs sufficiently to begin satisfying Creditor. Debtor has already agreed to rent and will execute new agreement for suite 104 in this month. By first ensuring a well-maintained, adequately insured property, Debtor maximizes the potential long-term return for all creditors. Moore Decl. ¶ 7-11.

28. Creditor's accusation of mismanagement is not true and would essentially cast nearly every reorganizing debtor as noncompliant. In reality, Debtor showed strong effort and cured insurance deficiencies, disclosed its cash collateral usage via formal motion, and maintained open communication with the U.S. Trustee and Creditor. Expenditures on health insurance and reimbursements for operational outlays are standard and legitimate business costs, not insider enrichments. Moore Decl. ¶ 13. There will be no partner distribution in the plan as Creditor alleges. Exh. A. Two months into the case, Debtor's good faith, compliance efforts, and realistic plan for full payment stand in stark contrast to the minimal issues raised by Creditor, that cannot constitute a "substantial harm."

**C. The Estate Is Not Impermissibly Diminishing; Debtor's Plan Will Increase Value**

29. Creditor suggests the estate is eroding due to unpaid taxes or mortgage installments which would again essentially cast nearly every reorganizing debtor as noncompliant. It has been around two months since this case's inception. Debtor's strategy—leasing vacant units, negotiating rent arrears, and maintaining property upkeep—positions the Real Property to generate substantially more income. Debtor has already agreed to rent and will execute new agreement for suite 104 in

this month. As occupancy increases, monthly revenue will exceed operating costs. Addition of InnerScope's overdue rent further strengthens Debtor's financial position. The plan Debtor has will incorporate incremental payments to secured creditors once ongoing insurance and operational costs are stabilized. Moore Decl. ¶¶ 3-8. This approach, although initially delaying direct payments to Creditor, ultimately maximizes estate value and recovery for all creditors.

30. Debtor has acted in good faith, has complied with the UST's requirements, and is diligently working toward a consensual resolution benefitting all parties. Moore Decl. ¶ 9. Under these circumstances, premature liquidation or dismissal would only diminish recoveries and disrupt otherwise promising reorganization efforts.

### D. Even if Cause Existed, 11 U.S.C. § 1112(b)(2) Prevents Conversion or Dismissal Because Unusual Circumstances, a Viable Reorganization and Cure Are Present

31. Debtor's real property is valued at approximately $3.5 million versus $2 million in secured debt, leaving significant equity. Debtor filed this case only two months ago and has acted diligently to fix any administrative oversights. Moreover, Debtor's rent collection efforts and pursuit of new tenants present a high likelihood of achieving the occupancy and cash flow needed for a successful plan. Moore Decl. ¶¶ 3-8. Converting or dismissing this early would inhibit the full realization of equity and undermine the best interests of creditors poised to receive greater payment through a reorganization rather than a forced liquidation or foreclosure.

32. Debtor has prepared a six-month budget showing how, upon re-leasing vacant units, monthly rental income could meet or exceed its debt obligations and operating costs. Additionally, recovering over $500,000 from a tenant in arrears further strengthens Debtor's cash flow. Debtor thus has a concrete foundation to propose a viable plan of reorganization, and cure any payment alleged to be harmful to one or more creditors under 11 U.S.C. § 1112(b)(4)(D). Exh. A.

9
OPPOSITION TO JOINDER BY POPPY BANK IN U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS CHAPTER 11 CASE

33. The other alleged acts or omissions, failing to maintain non-force placed insurance and promptly providing certain documents, have been addressed. Because any deficiency has been cured or will be completed imminently, there is no basis for dismissal or conversion under 11 U.S.C. § 1112(b)(4)(C) or (H).

**C. Conversion or Dismissal Is Contrary to the Best Interests of Creditors and the Estate**

34. Finally, if the court finds cause, it must consider "whether dismissal or conversion is in the best interests of creditors and the estate." *In re Rand*, 2010 WL 6259960, at *10 & n.14 (B.A.P. 9th Cir. Dec. 7, 2010). Here, dismissal or conversion would jeopardize the substantial equity in the Real Property and prematurely terminate Debtor's efforts to restore occupancy, collect outstanding rents, and pay creditors in full. Because Debtor has demonstrated prompt compliance and the capacity to reorganize successfully, liquidation under Chapter 7 or dismissal of the case would diminish recoveries, harm creditors, and needlessly disrupt the businesses occupying the Property.

35. This case is still in its early stages, and Debtor has done precisely what the Bankruptcy Code requires: cure identified deficiencies, remain transparent with the UST, and move forward toward a plan that will protect creditors' interests. Permitting Debtor to remain in Chapter 11 provides the greatest prospect for maximizing the estate's value.

### V. CONCLUSION

For the reasons set forth above, Moore Holdings, LLC respectfully requests that this Court deny the Motion and Joinder in its entirety.

Respectfully submitted March 13, 2025.

*/s/ Stephan M. Brown*
Stephan M. Brown
Proposed Attorney for Moore Holdings, LLC
the Debtor in Possession
